**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | § | |
|---|---|---|
| IN RE: | § | CASE NO: 19-13024 |
| | § | |
| DENNIS SCACCIA, | § | CHAPTER 13 |
| | § | |
| DEBTOR. | § | SECTION A |

**MEMORANDUM OPINION AND ORDER**

This Court held a two-day evidentiary hearing (the "Hearing") on August 12, 2020, and August 17, 2020 to consider (1) the *Motion To Dismiss Chapter 13 Case, with Prejudice, and for Sanctions* (the "Florida Moon Motion To Dismiss"), [ECF Doc. 21], filed by Creditor Florida Moon, LLC ("Florida Moon"); (2) the *Trustee's Motion To Dismiss Case for Failure To File Plan*, as amended, (the "Trustee's Motion To Dismiss"), [ECF Docs. 27 & 28], filed by the Chapter 13 Trustee on January 28, 2020; and (3) this Court's *Order To Show Cause* filed on June 4, 2020, [ECF Doc. 51], ordering the Debtor to appear and show cause as to why his case should not be converted to one under chapter 7.  Florida Moon asserts that the Debtor and his counsel lacked good faith in filing the Debtor's bankruptcy case, and asks this Court to (i) dismiss the Debtor's chapter 13 case with prejudice pursuant to § 1307(c) of the Bankruptcy Code, (ii) impose upon the Debtor a one-year bar to re-filing for bankruptcy relief, and (iii) impose sanctions against the Debtor and his counsel under 11 U.S.C. § 105(a) and Bankruptcy Rule 9011.  No oppositions to the motions to dismiss were filed on behalf of the Debtor, but Debtor's counsel retained her own counsel and filed an opposition to the Florida Moon Motion To Dismiss to the extent it requests sanctions be imposed against her.  [ECF Doc. 70].

At the Hearing, the Court heard testimony from Dennis Scaccia ("Scaccia" or, post-petition, the "Debtor"); the Debtor's counsel, Sharry Sandler ("Sandler") of the law firm Sandler Michaud (the "Firm"); Florida Moon's principal, Andrew F. Toce; and Michael W. Smith, Commercial Loan Manager for Florida Moon. The Court admitted into evidence Florida Moon Exhibits A–R. At the close of evidence, the Court took the matter under advisement. [ECF Doc. 78].

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334. The matters presently before the Court constitute core proceedings that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b)(2)(A). The venue of the chapter 13 case is proper under 28 U.S.C. § 1408.

## FINDINGS OF FACT[1]

**A. The Prepetition Transfer of Scaccia's House to Scaccia Enterprises, LLC**

Prepetition, Scaccia owned immovable property located at 142 Crepemyrtle Road, Covington, Louisiana (the "House"), and used the House as his primary residence. A divorce caused Scaccia to struggle to maintain mortgage payments on the House. *See* Hr'g at Min. 14:31:26–:31:50 (Aug. 17, 2020). The Debtor learned of a refinancing opportunity through Florida Moon; however, Florida Moon engaged in commercial lending only, not consumer lending. *See* Hr'g at Min. 14:31:26. To obtain financing from Florida Moon, the Debtor worked with an attorney affiliated with Florida Moon to organize a Louisiana limited liability company, Scaccia

---

[1] These findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. To the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted and shall be construed and deemed conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed as findings of fact.

Enterprises, LLC, of which Scaccia was the sole member. *See* Hr'g at Min. 13:19:09–:19:53 (Aug. 17, 2020).

On April 26, 2018, Scaccia caused Scaccia Enterprises' Articles of Organization to be filed with the Louisiana Secretary of State. *See* Hr'g at Min. 13:19:09–:19:53 (Aug. 17, 2020); Florida Moon Ex. M. On May 13, 2018, Scaccia executed an Act of Donation and donated the House to Scaccia Enterprises. *See* Hr'g at Min. 13:30:10–:30:27; Florida Moon Ex. Q. On May 23, 2018, Scaccia signed a Promissory Note (the "Note") on behalf of Scaccia Enterprises in the principal amount of $285,000 plus 12% interest per annum and granted a mortgage on the House (the "Mortgage") in favor of Florida Moon. *See* Hr'g at Min. 13:17:17–:19:15 (Aug. 17, 2020); Florida Moon Ex. C. That same day, as a condition of lending, Scaccia executed a personal guaranty of the debt owed by Scaccia Enterprises to Florida Moon (the "Personal Guaranty"). *See* Hr'g at Min. 14:21:56–:22:44 (Aug. 17, 2020); *see* Florida Moon Ex. R. The Note contains a provision for the payment of attorneys' fees by the borrower if the Note is turned over to an attorney for collection due to default. *See* Florida Moon Ex. C. The Debtor acknowledged at the Hearing that Scaccia Enterprises never made any payments to Florida Moon under the Note. *See* Hr'g at Min. 13:07:12–:07:38 (Aug. 17, 2020).

**B. The Firm's Representation of Scaccia**

1. *Prepetition representation*

Scaccia testified that on or about April 2019, he retained Marc Michaud at the Firm to "determine what kind of strategy could be devised" that would allow Scaccia to keep the House.[2]

---

[2] Scaccia executed the Note and Mortgage on behalf of Scaccia Enterprises in May 2018. Although the Debtor testified that he first met with lawyers at the Firm between April and July 2018, the record shows that the legal services provided by the Firm started in April 2019, as evidenced by reference to a letter written by Michaud on the Debtor's behalf. *See* Hr'g at Min. 13:05:38–:06:42 (Aug. 17, 2020). The Court finds that the Debtor's retention of the Firm occurred in April 2019.

3

*See* Hr'g at Min. 13:05:40–:08:27 (Aug. 17, 2020). Michaud sent a letter to Florida Moon, challenging the validity and enforceability of the Note and Mortgage. *See* Hr'g at Min. 13:05:42–:08:53; 14:19:20–:21:30 (Aug. 17, 2020). After exchanging letters with the Firm on the subject, *see* Hr'g at Min. 14:19:20–:21:30, Florida Moon initiated foreclosure proceedings in state court on July 25, 2019, by filing a petition for executory process, *see* Florida Moon Ex. C. On August 7, 2019, the 22nd Judicial District Court for St. Tammany Parish issued a writ of seizure and sale for the House. *See* Florida Moon Ex. A. On the same day, the St. Tammany Parish Sheriff's Office issued a Notice of Seizure directed to "Scaccia Enterprises, LLC thru registered agent Dennis Scaccia" at the House address. *See id.* Also on August 7, 2019, the St. Tammany Parish Sheriff's Office issued a Third-Party Notice of Seizure (the "Third-Party Notice"), in the name of Florida Moon against Scaccia Enterprises. Florida Moon Ex. N. The Third-Party Notice was addressed to "Occupant" at the House address. The Notice of Seizure and Third-Party Notice scheduled the Sheriff's sale for October 2, 2019, but that sale was later rescheduled for November 6, 2019. *See* Florida Moon Exs. A & N; Hr'g at Min. 15:26:05–:26:50 (Aug. 12, 2020).

    2. *The Debtor's bankruptcy filing*

  Scaccia first met with Sandler in October 2019 and, understanding that the foreclosure sale of the House was scheduled on November 6, 2019, the two began preparing for a consumer bankruptcy filing under chapter 13 of the Bankruptcy Code. *See* Hr'g at Min. 15:22:23–:26:20; 15:30:50–:31:37 (Aug. 12, 2020); 13:32:20–:32:42 (Aug. 17, 2020). Both the Debtor and Sandler testified that the motivation for filing for bankruptcy relief was to stop the foreclosure sale on the House. *See* Hr'g. Min. 13:25:00–:26:00 (Aug. 17, 2020); Hr'g Min. 16:08:28–:12:56 (Aug. 12, 2020).

4

To prepare the bankruptcy petition for Scaccia, Sandler testified that she reviewed documents to assess ownership of the House and concluded that Scaccia Enterprises owned the House, not Scaccia individually. *See* Hr'g at Min. 15:30:50–:38:30 (Aug. 12, 2020). The paperwork she reviewed included the Personal Guaranty, the prior ownership history of the Property, the Notice of Seizure and the Third-Party Notice, the Scaccia Enterprises formation documents, and the Louisiana Secretary of State's Web site for information on Scaccia Enterprises. *See* Hr'g at Min. 15:30:50–:38:30 (Aug. 12, 2020).

At 8:15 A.M. on November 6, 2019, the day of the scheduled foreclosure sale of the House, Sandler filed a petition for consumer bankruptcy relief on Scaccia's behalf. *See* [ECF Doc. 1]; Hr'g at Min. 16:11:27 (Aug. 12, 2020). Sandler drafted the Petition, listing the Debtor's residential mailing address as follows:

Scaccia Enterprises LLC
142 Crepemyrtle Cr
Covington, LA 70433.

*See* Florida Moon Ex. E; [ECF Doc. 1]. Upon filing, the Court's automated filing system generated a *Notice of Bankruptcy Case Filing*. *See* Florida Moon Ex. F. That Notice, sent to creditors of the Debtor, stated that a "bankruptcy case concerning the debtor(s) listed below was filed under chapter 13 of the United States Bankruptcy Code, entered on 11/06/2019 at 08:15 AM and filed on 11/06/2019." *Id.* The Debtor was listed on the *Notice of Bankruptcy Case Filing* as:

**Dennis Michael Scaccia**
Scaccia Enterprises, LLC
142 Crepemyrtle Cr
Covington, LA 70433
SSN/ITIN: xxx-xx-8127

*Id.*

As soon as she filed the Petition, Sandler called and sent an e-mail to the St. Tammany Parish Sheriff's Office with the message "STOP SALE – 142 Crepemyrtle" in the subject line. *See* Florida Moon Ex. G; *see also* Hr'g at Min. 16:08–:09:31 (Aug. 12, 2020); Hr'g at Min. 9:44:13–:44:28 (Dec. 18, 2019). Sandler's e-mail attached the *Notice of Bankruptcy Case Filing*. *See* Florida Moon Ex. G. The filing of the Petition, along with Sandler's e-mail, stopped the November 6, 2019 foreclosure sale of the House.

Sandler never filed Schedules or a Statement of Financial Affairs on behalf of the Debtor and did not file a motion to extend the time to file such documents. She also never filed a disclosure of compensation into the record as required by 11 U.S.C. § 329, Bankruptcy Rule 2016(b), and this Court's governing presumptive-fee Order.

### C. Florida Moon's Motion for Stay Relief

On December 3, 2019, Florida Moon filed a *Motion for Declaratory Relief or, Alternatively, for Relief from the Co-Debtor Stay* (the "Lift-Stay Motion"), [ECF Doc. 10]. Sandler filed an opposition to that motion, [ECF Doc. 17], and the Court held a hearing on the Lift-Stay Motion on December 18, 2019. There, Sandler asserted theories that the co-debtor stay applied to Scaccia by way of his Personal Guaranty of Scaccia Enterprises' debt or, alternatively, that Scaccia Enterprises' asset—the House—somehow transferred back to Scaccia as the sole member of the LLC because the LLC had been deemed "not in good standing" on the Louisiana Secretary of State's Web site. *See* Hr'g at Min. 9:20:52–:54:26 (Dec. 18, 2019). Sandler also asserted that Scaccia had been under duress at the time he formed Scaccia Enterprises, executed the Note and Mortgage, and transferred ownership of the House to Scaccia Enterprises, but stated she had not filed an adversary proceeding to litigate those theories because the Debtor could not fund the litigation. *See id*. At that hearing, Sandler also admitted that the Debtor could not propose

6

a feasible plan of reorganization, which was the reason the Debtor had not filed Schedules or a proposed plan, and had not attended the § 341 meeting of creditors. *See id*. The Court entered an Order confirming that the automatic stay did not apply to the House, as the House was not property of the estate and the co-debtor stay did not apply to Scaccia Enterprises. [ECF Doc. 25].

### D. The Hearing on Florida Moon's Motion To Dismiss

The Debtor testified at the Hearing that he understood that Scaccia Enterprises owned the House at the time of filing his petition for bankruptcy relief, but that his purpose in filing for bankruptcy protection was to devise a way to start making payments on the House so that he could keep it. *See* Hr'g at Min. 13:20:40–:27:30 (Aug. 17, 2020). The Debtor also stated that he was not sure what effect filing for bankruptcy would have on the scheduled foreclosure sale, but that he trusted his attorneys to act on his behalf. *See id*. The Debtor acknowledged that he made no payments to the chapter 13 trustee, was doubtful that Schedules had been completed on his behalf, and was unsure whether a plan of reorganization had been filed into the record. *See id*. He testified that he and counsel did not file the Schedules or Statement of Financial Affairs into the record because, by mid-to late-December 2019, he had stopped working, could not afford to make plan payments, and felt he no longer qualified for relief under chapter 13. *See* Hr'g at Min. 13:50:15–:55:50 (August 17, 2020).

Sandler confirmed that the purpose of the Debtor's bankruptcy filing was first to stop the foreclosure sale of the House. *See* Hr'g at Min. 16:08:29–:12:56 (Aug. 12, 2020). She reiterated the same arguments that she made at the hearing to consider Florida Moon's Lift-Stay Motion in December 2020: Although she knew that the stay associated with a chapter 13 filing would not apply to property owned by a limited liability company and that only individuals may be debtors in chapter 13, she operated under her own theory that a guarantee or the company's "inactive"

7

status could transform property of the company into property of the Debtor—or at least transform the Debtor into a co-debtor with the company such that the automatic stay would apply and act to stop the foreclosure sale. *See* Hr'g at Min. 15:22:23–:26:20; 15:30:50–:31:37 (Aug. 12, 2020). Sandler took little responsibility regarding the effects that her inclusion of "Scaccia Enterprises, LLC" in the listing of the Debtor's address on the bankruptcy petition would have. She testified that, although she knew that the corporate name would be included in the *Notice of Bankruptcy Case Filing* and took steps to e-mail that Notice herself to the parish sheriff's office, the attorneys at the sheriff's office held the responsibility for discerning whether Scaccia Enterprises had filed for bankruptcy—and whether the foreclosure sale should proceed. *See* Hr'g at Min. 16:05:49; 16:08:29–:12:56 (Aug. 12, 2020).

As to why she never filed Schedules, a Statement of Financial Affairs, or a plan of reorganization, Sandler testified that "she realized the stay was not going to apply" and believed the Debtor would be "better off if he let the foreclosure go forward," further adding that she felt that the case should be dismissed. *See* Hr'g at Min. 16:37:17–:39:10 (Aug. 12, 2020). But she never filed a motion to voluntarily dismiss the Debtor's chapter 13 case.

## CONCLUSIONS OF LAW

**A. Legal Standards for Determining Whether the Debtor Lacked Good Faith in Filing His Bankruptcy Case**

Section 1307 of the Bankruptcy Code permits a court to convert a chapter 13 case to one under chapter 7 or dismiss the case "whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1307(c). Although the Bankruptcy Code does not define "cause," the Code defines "cause" to include the following:

(1) unreasonable delay by the debtor that is prejudicial to creditors;

. . .

8

>(3) failure to file a plan timely under section 1321 of this title; [and]
>
>(4) failure to commence making timely payments under section 1326 of this title . . . .

*Id*. § 1307(c)(1), (3)–(4). But "cause" may also be described as "any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process." *In re Krueger*, 812 F.3d 365, 370 (5th Cir. 2016) (quoting *Little Creek Dev. Co. v. Commonwealth Mortg. Co. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1071 (5th Cir. 1986)).

In addition to the above-listed examples, lack of good faith can also constitute "cause" to dismiss or convert a Chapter 13 petition. *See In re Thalmann*, 469 B.R. 677, 681 (Bankr. S.D. Tex. 2012) (citation omitted). "The good faith requirement is the 'policing mechanism' that ensures those who invoke the reorganization process of Chapter 13 do so only to accomplish the objectives of bankruptcy policy." *In re Parson*, 632 B.R. 613, 626 (Bankr. N.D. Tex. 2021) (citation omitted). "[C]ourts must define good faith on a case-by-case basis." *Id*. (citation omitted). Factors that bankruptcy courts may consider in deciding whether a debtor lacks the requisite good faith in filing a petition for bankruptcy relief include

>(1) whether the debtor misrepresented facts in her petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed the Chapter 13 petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor only intended to defeat state court litigation; and (4) whether other egregious behavior is present.

*In re Parson*, 632 B.R. at 626 (quoting *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999)) (emphasis omitted). "These factors only serve to inform the inquiry; they are merely consideration for the Court in looking at the totality of the circumstances." *Id*.

As the movant, Florida Moon must demonstrate by a preponderance of the evidence that the Petition was filed in bad faith. *See In re Walker*, No. 12-32098, 2012 WL 4468602, at * 2 (Bankr. D.S. Tex. Sept. 24, 2012) (citation omitted).

9

**B. The Court Finds That the Debtor and His Counsel Filed the Petition in the Absence of Good Faith**

After evaluating all of the facts and circumstances here, including a review of the record, the Court concludes that Debtor and his counsel, Sandler, filed the petition in the absence of good faith. The Debtor and his counsel misrepresented facts in the Petition and unfairly manipulated the Bankruptcy Code by including the name of the corporate owner of the Debtor's House in the listing of the Debtor's address. That action was taken knowing not only that the Debtor did not own the House, but also that the corporate owner's name would appear on the automatically generated *Notice of Bankruptcy Case Filing* and stop the foreclosure sale of the House. In fact, as soon as she filed the Petition, Sandler called and sent an e-mail to the parish sheriff's office, attaching the *Notice of Bankruptcy Case Filing*, to stop the foreclosure sale of the House scheduled for that day. That improper use of the bankruptcy process and delay of the foreclosure sale prejudiced creditor Florida Moon and subjected it to unreasonable delay in the exercise of its state law rights. The Court finds counsel's actions to be particularly egregious.[3]

The Firm defended the Debtor against the foreclosure proceeding prepetition. As the date of the foreclosure sale approached, both the Debtor and Sandler testified that the sole motivation to file for bankruptcy relief was to stop the foreclosure sale on the House. To be clear, filing for bankruptcy relief to stop a foreclosure sale is not unusual, nor is it a *per se* act demonstrating a

---

[3]   The Court makes that finding in part because this is not the first time Sandler has used similar tactics. On November 7, 2019, one day after the filing of the Petition in this case, Sandler and her Firm filed a petition for bankruptcy relief on behalf of another client, whose assets were similarly held by an affiliated corporate entity. [No. 19-13035]. On that debtor's consumer bankruptcy petition, Sandler included the debtor's residential address, but purposely designated his "mailing address" as that of the corporate entity. [No. 19-13035, ECF Doc. 1]. That designation resulted in the inclusion of the corporate entity's name on the *Notice of Bankruptcy Case Filing*, which served to cancel a foreclosure sale of property held by the corporate entity. [No. 19-13035, ECF Docs. 3 & 25]. After an evidentiary hearing in that matter, the Court found those actions by counsel, among others, formed the basis for granting a motion to disgorge funds filed by subsequent counsel for the debtor. [No. 19-13035, ECF Doc. 346].

lack of good faith in filing. The evidence here shows, however, that Sandler knew that the House was not property of the Debtor's estate as the House was not titled in the Debtor's name and she also knew that the automatic stay would not apply to the foreclosure proceeding. The fact that the Debtor did not participate in the bankruptcy process after the date of filing is further evidence of the Debtor's and counsel's lack of good faith in initiating bankruptcy proceedings. Although the Debtor testified that he provided information to Sandler to complete Schedules, no Schedules, Statement of Financial Affairs, or Plan were ever filed on behalf of the Debtor and the Debtor made no payments to the chapter 13 trustee. Sandler also never filed a disclosure of compensation into the record as required by 11 U.S.C. § 329, Bankruptcy Rule 2016(b), and this Court's governing presumptive-fee Order.

For those reasons, the Court finds that the Debtor and his counsel filed this case with a lack of good faith and further finds that dismissal under § 1307(c) of the Bankruptcy Code is appropriate in the best interests of creditors and the estate. This chapter 13 case was never an attempt at reorganization, but instead was primarily a tactic to delay or avoid the enforcement of a debt.

### C. The Court Declines To Dismiss the Case with Prejudice

Florida Moon requests that the case be dismissed with prejudice and the Debtor be barred for twelve months from re-filing a subsequent Chapter 7, 11, or 13 petition. Bankruptcy courts have discretion to dismiss with prejudice and impose a filing injunction against a debtor, but typically such sanctions are reserved for filers who are found to have abused the bankruptcy process through serial filings designed to prejudice creditors. *See, e.g., In re Stathatos v. United States Trustee (In re Stathatos),* 163 B.R. 83, 87 (N.D. Tex. 1993) (affirming the bankruptcy court's dismissal with prejudice and imposition of a bar to re-filing against a serial filer pursuant to 11 U.S.C. § 105(a); *In re Nutter*, No. 09-34827, 2010 WL 271272, at *1 (Bankr. S.D. Tex. Jan.

11

15, 2010) (dismissing *pro se* debtor's case with prejudice due to serial filings and willful failure to appear in proper prosecution of the case); *In re Parson*, 632 B.R. 613, 631 (Bankr. N.D. Tex. 2021) (dismissing *pro se* debtor's case with prejudice for filing multiple bankruptcies in an attempt to frustrate creditors and stave off foreclosure proceedings).

The Court observes that this case is the first bankruptcy case filed by this Debtor. Although the Debtor failed to participate in the bankruptcy process after the Petition was filed on his behalf, the Court is not inclined to impose sanctions on the Debtor further than dismissal of his case. The evidence presented at the hearing revealed that the Debtor relied heavily on the direction and advice of counsel to provide the ill-conceived basis for the filing and his limited participation in the bankruptcy process thereafter.

### D. Imposition of Sanctions Against the Firm Is Warranted Under § 105(a) and the Court's Inherent Power

Florida Moon also seeks sanctions in the form of attorneys' fees and costs against Sandler and the Debtor pursuant to Bankruptcy Rule 9011 and the Court's inherent power under 11 U.S.C. § 105(a).[4]

"Federal courts have inherent powers which include the authority to sanction a party or attorney when necessary to achieve the orderly and expeditious disposition of their dockets." *Carroll v. Abide (In re Carroll)*, 850 F.3d 811, 815 (5th Cir. 2017) (citations omitted); *see also In re Spectee Grp., Inc.*, 185 B.R. 146, 155 (Bankr. S.D.N.Y. 1995) ("A Court has inherent authority to supervise and control its own proceedings, and to require the payment of the other party's

---

[4] The Court will not assess sanctions under Rule 9011 because Florida Moon did not file a separate motion requesting sanctions. *See* FED. R. BANKR. P. 9011(c)(1)(A); *In re KPMA P'ship, Ltd.*, No. 04-35261, 2006 WL 2868978, at *1 & n.1 (Bankr. S.D. Tex. Oct. 5, 2006); *Troost v. Kitchin (In re Kitchin)*, 327 B.R. 337 (Bankr. N.D. Ill. 2005) (citing *Ridder v. Springfield*, 109 F.3d 288, 294 n.7 (6th Cir. 1997)).

attorney's fees by one who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986))).

This Court also has a statutory grant of authority under § 105(a) of the Bankruptcy Code "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In addition to granting broad power to implement provisions of the Bankruptcy Code, § 105(a) "has been interpreted as supporting the inherent authority of the bankruptcy courts to impose civil sanctions for abuses of the bankruptcy process." *In re Carroll*, 850 F.3d at 816 (quoting *Walton v. LaBarge, Jr. (In re Clark)*, 223 F.3 859, 864 (8th Cir. 2000); *Friendly Fin. Discount Corp. v. Tucker (In re Tucker)*, No. 99-31069, 2000 WL 992448, at *3 (5th Cir. June 28, 2000)); *see also In re Tabor*, 583 B.R. 155, 177 (Bankr. N.D. Ill. 2018) (citing *In re Volpert*, 110 F.3d 494, 500 (7th Cir. 1997)).

"The Fifth Circuit has held that the imposition of sanctions using § 105 as well as the inherent power of the Court must be accompanied by a specific finding of bad faith." *In re Bradley*, 495 B.R. 747, 793 (Bankr. S.D. Tex. 2013) (collecting cases). As described above, the Court has specifically found that the Debtor and his counsel filed this case in the absence of good faith as they misrepresented facts in the Petition and unfairly manipulated the Bankruptcy Code to unreasonably delay Florida Moon in the exercise of its state law rights to enforce the obligation owed to it by Scaccia Enterprises.

At the hearing, Florida Moon's principal, Andrew F. Toce, testified regarding the fees and costs Florida Moon incurred as a result of the Debtor's bad-faith bankruptcy filing. Toce testified that when the November 6, 2019 foreclosure sale was canceled due to the sheriff's receipt of the Debtor's misleading *Notice of Bankruptcy Case Filing*, Florida Moon hired attorney Darryl Landwehr to file and litigate the Lift-Stay Motion. *See* Hr'g at Min. 14:08:00–:17:00 (Aug. 17,

13

2020). Toce testified that Florida Moon incurred legal fees and costs associated with the prosecution of the Lift-Stay Motion totaling $16,884.33 through July 12, 2020. *See* Florida Moon Ex. P; Hr'g at Min. 14:16:20 (Aug. 17, 2020); ECF Doc. 25. Landwehr's fees were incurred at an hourly rate of $290. *See* Hr'g at Min. 14:16:25 (Aug. 17, 2020). The Court reviewed Landwehr's invoices. Landwehr's invoice does not correctly calculate the amount of fees; the invoice reflects fees totaling $9,599 for 57.9 hours of work. *See* Florida Moon Ex. P. Multiplying the hours worked by the hourly rate, the Court reached a total fee amount of $16,791. Although the total costs are listed as $48.78, that total did not include a $44.55 expense paid by Florida Moon, so the actual total costs are $93.33. *See id.* Including the $93.33 total costs, the total amount of reasonable fees and costs incurred by Florida Moon for services of its bankruptcy counsel is $16,884.33, in agreement with Toce's testimony. *See id.*

In addition to the fees and costs incurred by Florida Moon to prosecute the Lift-Stay Motion, Toce testified as to fees and costs incurred by the law firm of Rodrigue & Rodrigue ("Rodrigue"), Florida Moon's non-bankruptcy counsel which handles foreclosures, to reinstate the foreclosure sale that had been canceled by the Debtor's bad-faith bankruptcy filing. *See* Hr'g. at Min. 14:12:43–:13:23 (Aug. 17, 2020); Florida Moon Ex. O. Toce testified that the fees documented in Exhibit O are partially incorrect and that the post-petition fees to reinstate the sale were $3,623.30, not $1,500. *See* Hr'g at Min. 14:12:43–:13:23; 14:15:05 (Aug. 17, 2020).[5] Unlike Landwehr's fees and costs, however, Toce's testimony regarding Rodrigue's fees and costs is not supported by the documentary evidence. The documentation provided by Rodrigue establishing additional fees incurred is illegible. Therefore, the Court finds that the total amount of reasonable

---

[5] The exhibit also shows a prepetition charge of $1,500 associated with the initial foreclosure sale. *See* Florida Moon Ex. O. The court disregards any claim for prepetition fees.

attorneys' fees and costs incurred by Florida Moon for services of its non-bankruptcy counsel is $1,960.52, representing $1,500 in fees and $460.52 in costs. *See* Florida Moon Ex. O.

Toce further testified that Florida Moon suffered damages of approximately $24,000 in lost rent from November 2019 (the date of the original foreclosure sale) through August 2020, when Florida Moon finally obtained possession of the Property. *See* Hr'g. at Min. 14:16:50–:17:27 (Aug. 17, 2020). Based on Toce's testimony alone without further corroboration, the Court finds that Florida Moon failed to produce sufficient evidence to recoup lost rent. *See In re Liljeberg Enterprises, Inc.*, 304 F.3d 410, 448 (5th Cir. 2002) (holding that "lost profits must be proven with reasonable certainty and cannot be based on conjecture and speculation") (internal citations and quotation marks omitted).

The tactics employed in this case by Sandler as Debtor's counsel and an officer of this Court constitute an abuse of the bankruptcy process warranting monetary sanctions in order "to deter repetition of such conduct or comparable conduct by others similarly situated." *In re Bradley*, 495 B.R. at 802. Therefore, the Court imposes sanctions in the total amount of $18,844.85 against the Firm payable to Florida Moon. *See In re Carroll*, 850 F.3d at 816 (affirming monetary sanctions against debtors in favor of trustee under § 105(a) for abusive and bad-faith conduct); *In re Volpert*, 110 F.3d 494, 500 (7th Cir. 1997) (affirming monetary sanctions against attorney under § 105(a) for "unreasonably and vexatiously" multiplying the proceedings).

## CONCLUSION

In accordance with the foregoing findings of fact and conclusions of law,

**IT IS ORDERED** that the Florida Moon Motion To Dismiss is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that the Trustee's Motion To Dismiss is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the case is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that monetary sanctions are assessed against the law firm of Sandler Michaud, LLC in the amount of $18,844.85 in favor of Florida Moon, LLC and shall be payable to Florida Moon within thirty days of this Order by mailing via commercial courier or hand-delivering certified funds to Florida Moon's bankruptcy counsel, Darryl Landwehr.

**IT IS FUTHER ORDERED** that all parties shall bear their own attorneys' fees and costs associated with the evidentiary hearing in this matter.

**IT IS FURTHER ORDERED** that the Show Cause Order is **DEEMED SATISFIED**.

New Orleans, Louisiana, April 25, 2022.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE